Marc A. Lavaia (ML2875)
BARTON BARTON & PLOTKIN, LLP
420 Lexington Avenue
New York, New York 10170
Phone: (212) 687-6262
Fax:    (212) 687-3667
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOSE ORTIZ p/k/a JAO

              Plaintiff,

   -against-

GUITIAN BROTHERS MUSIC INC., OSCAR
GUITIAN, and UNIVERSAL MUSIC GROUP
DISTRIBUTION, INC.

              Defendant(s).
----------------------------------------------------------------X

07 Civ. 3897

VERIFIED COMPLAINT

Jury Trial Demanded

[Stamps: JUDGE SWEET; RECEIVED MAY 18 2007 U.S.D.C. S.D.N.Y. CASHIERS]

  Plaintiff JOSE ORTIZ p/k/a JAO (hereinafter "Plaintiff"), by his attorneys, BARTON BARTON & PLOTKIN, LLP complaining of the above named Defendants, GUITIAN BROTHERS MUSIC INC. (hereinafter "GUITIAN MUSIC"), OSCAR GUITIAN, (hereinafter "GUITIAN"), UNIVERSAL MUSIC AND VIDEO DISTRIBUTION (hereinafter "UNIVERSAL") (hereinafter collectively referred to as "Defendants") alleges upon knowledge as to his own acts and upon information and belief as to the acts of others as follows:

## NATURE OF ACTION

  1. This is an action for damages by the Plaintiff against Defendants for copyright infringement. This action is brought under the Federal Copyright Act of 1976,

as amended, 17 U.S.C.A. §§101 et seq.. This action also asserts claims for unfair competition and unfair trade practices and breach of quasi contract unjust enrichment.

### THE PARTIES

2. The Plaintiff is an individual residing in the State of New York with an address at 520 West 151st Street, Apt. 3B, New York, New York 10031.

3. Upon information and belief, at all times hereinafter mentioned, GUITIAN MUSIC was and is a corporation duly organized and existing under the laws of the State of Florida, with a principal place of business at 8051 N.W. 36 Street, Doral, FL 33166.

4. Upon information and belief, at all times hereinafter mentioned, GUITIAN MUSIC transacted and conducted business within the State of New York and/or contracted to supply goods in the State of New York.

5. Upon information and belief, at all times hereinafter mentioned, GUITIAN MUSIC regularly does or solicits business, or engages in other persistent courses of conduct, or derives substantial revenue from goods used or consumed in the State of New York.

6. Upon information and belief, at all times hereinafter mentioned, GUITIAN MUSIC expected or should reasonably have expected its acts to have consequences in the State of New York, and it derived substantial revenue from interstate and/or international commerce.

7. Upon information and belief, at all times hereinafter mentioned, GUITIAN is an individual residing in the State of Florida with an address at 662 SE 6th Place, Hialeah, FL 33010 and was and remains a principal of GUITIAN MUSIC and

upon information and belief, is an active, conscious and moving force behind the infringements and wrongful acts alleged herein.

8. Upon information and belief, at all times hereinafter mentioned, GUITIAN transacted and conducted business within the State of New York or contracted to supply goods in the State of New York.

9. Upon information and belief, at all times hereinafter mentioned, GUITIAN regularly does or solicits business, or engages in other persistent courses of conduct, or derives substantial revenue from goods used or consumed in the State of New York.

10. Upon information and belief, at all times hereinafter mentioned, GUITIAN expected or should reasonably have expected his acts to have consequences in the State of New York, and he derived substantial revenue from interstate or international commerce.

11. Upon information and belief, at all times hereinafter mentioned, UNIVERSAL was and still is a is a for profit Corporation duly organized and existing under the laws of the State of Delaware and authorized as a Foreign Business Corporation under the laws of the State of New York with a principal place of business located at 111 Eighth Avenue, New York, New York, 10011.

12. Upon information and belief, Universal was formerly named Universal Music and Video Distribution, Inc. The change to the current name was announced by Jim Urie, the President of the company, on April 28, 2006.

13. Upon information and belief, at all times hereinafter mentioned, UNIVERSAL transacted and conducted business within the State of New York or contracted to supply goods in the State of New York.

14. Upon information and belief, at all times hereinafter mentioned, UNIVERSAL regularly does or solicits business, or engages in other persistent courses of conduct, or derives substantial revenue from goods used or consumed in the State of New York.

15. Upon information and belief, at all times hereinafter mentioned, UNIVERSAL expected or should reasonably have expected its acts to have consequences in the State of New York, and it derived substantial revenue from interstate or international commerce.

## JURISDICTION AND VENUE

16. Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331, 1338(a), as it is an action arising under Acts of Congress relating to copyrights, namely, the Federal Copyright Act of 1976, 17 U.S.C. §101 et seq. This Court has pendant jurisdiction over the claims arising under state law pursuant to 28 U.S.C. §1338(b).

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and § 1400(a), as arising from the infringement within the County of New York and as Defendants are corporations subject to personal jurisdiction in this district and are therefore deemed to reside here for purposes of venue.

## PRELIMINARY STATEMENT AND BACKGROUND

18. Plaintiff is engaged in the business of music composition and production.

19. GUITIUAN MUSIC is in the business of operating a record label.

20. Upon information and belief, at all times hereinafter mentioned, GUITIAN is in the business of managing a record label. He is the sole shareholder of GUITIAN MUSIC.

21. Upon information and belief, at all times hereinafter mentioned, UNIVERSAL is in the business of publishing and distributing music CDs and DVDs.

22. In 2003 GUITIAN, together with his brother Jose Manuel Guitian p/k/a Don Dinero ("Dinero"), solicited Plaintiff to create a series of musical works (the "Works"), to be used as the instrumental score for the motion picture "Su Vida y la Calle" (the "Motion Picture").

23. The production of the Motion Picture, including the production of the Works, was intended as the first project of the then yet to be founded GUITIAN MUSIC.

24. Initially, it had been planned that GUITIAN, Dinero and Plaintiff would all own shares in GUITIAN MUSIC. GUITIAN and Don Dinero were supposed to each receive forty five percent (45%) of the shares and Plaintiff the remaining ten percent (10%) of the shares.

25. Upon information and belief, Defendant GUITIAN at the time of the solicitation, in correlation with the proposed corporate share in GUITIAN MUSIC, also offered Plaintiff a ten (10%) percent share in the publishing rights for said Works as additional consideration for the production and recording services.

26. The parties never executed any written agreement with respect to the music production services that were to be provided by Plaintiff for use in connection with the Motion Picture.

27. On July or about 12, 2003 Plaintiff flew to Miami, FL where he started to compose the Works for the Motion Picture.

28. Upon Information and belief, the footage for the Motion Picture was shot in August and September on set in Miami, FL and New York, NY.

29. In the meantime, unbeknownst to the Plaintiff, GUITIAN unilaterally founded GUITIAN BROTHERS and established himself as the sole shareholder.

30. Upon information and belief, GUITIAN, without the knowledge of Plaintiff, filed to incorporate GUITIAN MUSIC on or about July 30, 2003.

31. During July, August and September Plaintiff made three (3) additional trips to Miami in order to complete the Works for the Motion Picture and in order to edit and incorporate the Works into the Motion Picture.

32. Plaintiff paid the expenses for his transportation himself. Also, he produced and arranged the Works at his own home-studio in New York City. It was the understanding between the parties that Plaintiff would later be reimbursed by GUITIAN for the cost of transportation, and that the Plaintiff would be paid a separate production fee for each of the Works produced by him for the background instrumental score.

33. In total, Plaintiff produced thirteen (13) works that were then used as the background instrumental score for the Motion Picture. A listing of the songs is attached hereto as Exhibit "A"; a play list of said songs in the order they appear in the Motion Picture are attached hereto as Exhibit "B."

34. The works were registered on August 3, 2005 in accordance with the Copyright statute and was assigned Copyright Certificate of Registration number PA-1-289-403. (Proof of said copyright registrations attached hereto as Exhibit "C").

35. Plaintiff is the sole owner of the copyrights in the Works.

36. Upon information and belief Defendants, on or about November 25, 2003, released and began selling and distributing directly to the public a DVD entitled "Don Dinero - Su Vida y la Calle" containing the Motion Picture which features the Works as the background instrumental score (the "Infringing DVD").

37. Plaintiff is expressly listed as producer of the musical score in the closing credits of the Motion Picture.

38. From November 2003 until the present, Defendants sold and distributed and are still selling and distributing the Infringing DVD containing the Motion Picture and the Works throughout the United States and in other countries of the world.

39. Approximately one year after the initial release of the Infringing DVD, on or about November 23, 2004, Defendants released an audio CD entitled "The Best of Don Dinero". This CD was accompanied by the Infringing DVD containing the Motion Picture and the Works as a so-called "bonus".

40. From November 2004 Defendants sold and distributed and still sell and distribute the CD accompanied by the "bonus" Infringing DVD containing the Motion Picture and the Works throughout the United States and in other countries of the world.

41. No licenses for the Works were secured by Defendants.

42. By letter, dated November 16, 2005, Plaintiff demanded payment of the outstanding monies due to him for his services, including the reimbursement for the flights and payments for the production of the thirteen (13) songs, as well as the owed royalty payments.

43. To date, Plaintiff has not been compensated by Defendants for his travel expenses to Miami and/or for the production services rendered by him to Defendants.

44. Moreover, Plaintiff was never paid any of the money he is owed from Defendants' publishing of his work which is due to Plaintiff through his ownership in the copyright of the Works.

45. Since the release of the DVD containing the Motion Picture and the Works on or about November 25, 2003, Defendants have infringed, and continue to infringe the Works by featuring the Works in the Motion Picture.

46. Defendants' acts are willful and not only violate the Federal Copyright Act, but also constitute unfair competition and deceptive trade practices, which may result in the likely dilution of Plaintiff's works in the eyes of the consuming public.

47. Plaintiff brings this lawsuit: (i) to enjoin defendants from continuing the unlawful copying, licensing, manufacturing, synchronization, distribution, use and/or other exploitation of Plaintiff's Works and their conversion of Plaintiff's valuable and unique property rights in connection therewith, (ii) to recover from Defendants actual damages on all causes of action permitted by law, (iii) destruction of the infringing material, and (iv) the costs of this action, including attorneys' fees, arising from Defendants' aforesaid unlawful conduct to date.

## COUNT I
## COPYRIGHT INFRINGEMENT

48. Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

49. Defendants have usurped Plaintiff's unique and valuable copyrights in the Works, by forging ahead with the distribution, synchronization and use of the Works without obtaining a license from Plaintiff, and upon information and belief, the

Defendants have continued with their infringing conduct even after being notified by Plaintiff and making them aware of their infringements against Plaintiff.

50. Prior to embarking on their exploitation of Plaintiff's rights, Defendants never sought or obtained a license from Plaintiff.

51. Defendants acted in knowing and reckless disregard of Plaintiff's rights. Defendants' infringement was "willful," as that term is used in the Copyright Act of 1976, in that Defendants copied, distributed, synchronized and/or reproduced Plaintiffs Works.

52. Therefore, Defendants infringed upon Plaintiff's copyrights in the Works by unlawfully featuring the Works in the nationally, and upon information and belief, internationally, distributed motion picture. The aforesaid exploitation of Plaintiff's Works, in derogation of and injurious to Plaintiff's copyrights, all to Plaintiff's substantial detriment.

53. Therefore, and by reason of the foregoing acts of copyright infringement, Plaintiff is entitled to a permanent injunction restraining Defendants from continuing the aforesaid acts of infringement, and to an award of damages in an amount to be determined at trial.

## COUNT II
## UNFAIR COMPETITION

54. Plaintiff realleges paragraphs 1 through 53 as if fully set forth herein.

55. This action for unfair competition is a substantial and related claim to Defendants' infringement of Plaintiff's copyrights and pursuant to SEC 1338(b) of Title 28 of the United States Code, the Court has and should assume pendent jurisdiction of this claim.

56. Defendants, in unlawfully and willfully copying and using the Works in the Motion Picture, created a likelihood of confusion among the public as to the original source of Plaintiff's work and have contributed to the dilution of the distinctive quality of Plaintiff's work in the marketplace.

57. Defendants' by their unauthorized use of Plaintiff's copyrighted work, have and are engaged in acts that not only violate the Federal Copyright Act, but also constitute unfair competition and deceptive trade practices, unjust enrichment, the wrongful deception of the purchasing public, unlawful trading on Plaintiff's good will, and which may result in the likely dilution of Plaintiff's Works, all to Plaintiff's irreparable damage.

## COUNT III
## QUASI CONTRACT UNJUST ENRICHMENT
## AGAINST DEFENDANT GUITITAN and GUITIAN MUSIC

58. Plaintiff incorporates by reference paragraphs 1 through 57 as if fully set forth herein.

59. Upon information and belief, Defendants GUITIAN and GUITIAN MUSIC at all times were aware, and presently are aware, that they are expected to pay royalties and mechanical licenses deriving from the Works to Plaintiff.

60. Also, upon information and belief, GUITIAN and GUITIAN MUSIC at all times were aware, and presently are aware, that they are expected to reimburse Plaintiff for the transportation expenses for his trips to Miami, where he rendered the services, as well as for the monies owed to Plaintiff with respect to the production fees for each of the thirteen (13) works.

61. Upon information and belief, GUITIAN and GUITIAN MUSIC have at all times herein mentioned, and presently, refuse to pay said royalties, mechanical licenses and compensation for the provided services that are due and owing.

62. Upon information and belief, GUITIAN and GUITIAN MUSIC remain in possession of the outstanding royalties and the compensation for the production services which are now due and owing and belonging to the Plaintiff, even though the Plaintiff has performed beneficial services for GUITIAN and GUITIAN MUSIC.

63. That by reason of the foregoing, GUITIAN and GUITIAN MUSIC have wrongfully accepted the benefits of the Plaintiff's production services and the outstanding royalties for the services and GUITIAN and GUITIAN MUSIC have been, and continue to be, unjustly enriched by those funds at the detriment of Plaintiff.

64. Plaintiff is at present unable to ascertain the full extent of the monetary damages Plaintiff has suffered by reason of GUITIAN and GUITIAN MUSIC's unjust enrichment, but Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Plaintiff has sustained such damage in an amount exceeding one hundred thousand Dollars ($100,000.00).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands:

A. That Defendants, their agents, and servants be enjoined, during the pendency of this action, and permanently thereafter, from infringing the aforesaid copyright of Plaintiff in any manner, and from publishing, licensing, selling, marketing and/or otherwise disposing of any copies of the infringing Works, as aforesaid;

B.  That Defendants be required to deliver up, to be impounded during the pendency of this action, all copies of the motion picture "Su Vida y la Calle" containing the infringing Works in their possession or under their control, and to deliver up for destruction all infringing copies and all other matter for making such infringing copies;

C.  That Defendants be required to pay to Plaintiff such actual damages as he has sustained as a result of Defendant's copyright infringement pursuant to 17 U.S.C. §504(b);

D.  That Defendants be required to account for and disgorge to Plaintiff:

(a) all gains, profits, and advantages derived by Defendants from their infringement of said Plaintiff's copyright pursuant to 17 U.S.C. 504(b); and/or

(b) all gains, profits, and advantages derived by Defendants from the aforesaid unfair trade practices and unfair competition; and/or

E.  That Defendants be required to pay Plaintiff statutory damages pursuant to 17 U.S.C. §504(c);

F.  That Defendant GUITIAN be required to pay Plaintiff an amount the Court deems just and proper, but not below one hundred thousand Dollars ($100,000.00), together with punitive damages in the amount of one million dollars ($1,000,000.00);

G.  That Defendant be ordered to pay to Plaintiff the costs of this action along with reasonable attorney fees; and

H.  That Plaintiff be granted such further relief as the Court deems just and proper.

Dated: New York, New York
      May 4, 2007

                            Yours, etc.

                            BARTON BARTON & PLOTKIN, LLP

                            By: _____

                            Marc A. Lavaia (ML2875)
                            *Attorneys for Plaintiff*,
                            420 Lexington Avenue
                            New York, New York 10170
                            Phone: (212) 687-6262
                            Fax:   (212) 687-3667

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOSE ORTIZ p/k/a JAO

                         Plaintiff,       06 Civ. _____

    -against-              **DEMAND FOR JURY TRIAL**

GUITIAN BROTHERS MUSIC INC., OSCAR
GUITIAN, and UNIVERSAL MUSIC GROUP
DISTRIBUTION, INC.

                        Defendant(s).
-------------------------------------------------------X

      Plaintiff hereby demands a jury trial of all issues properly triable thereby.

Dated: New York, New York
       May 4, 2007

                                  BARTON BARTON & PLOTKIN, LLP
                                  Attorneys for Plaintiff

                                  By: _____
                                  Marc A. Lavaia (ML 2875)
                                  420 Lexington Avenue
                                  New York, New York 10170
                                  Phone: (212) 687-6262
                                  Fax:   (212) 687-3667

## VERIFICATION

UNITED STATES DISTRICT COURT  )
                                                           ) ss:
SOUTHERN DISTRICT OF NEW YORK  )

I, JOSE ORTIZ, being duly sworn says that I am the President of the Plaintiff herein, I have read the foregoing VERIFIED COMPLAINT and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true. The grounds of my belief as to all matters not stated upon my own knowledge are documents in my possession and conversations with the Plaintiff's witnesses.

Dated: New York, New York
       May 4, 2007

_____
Jose Ortiz

Sworn to before me this
___ day of April 2007

_____
Notary Public

Morgan Downer
Notary Public, State of New York
No. 02DO6152128
Qualified in New York County
Commission Expires August 28, 2010