UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JOSE ORTIZ p/k/a/ JAO,                        :

        Plaintiff,                        :

      -against-                        :     Case No. 07 CV 3897 (RWS)

GUITIAN BROTHERS MUSIC INC.,        :
OSCAR GUITIAN, and UNIVERSAL MUSIC
GROUP DISTRIBUTION, INC.,              :

       Defendants.                        :
--------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF
## UNIVERSAL'S MOTION FOR SUMMARY JUDGMENT


LOEB & LOEB LLP
Barry I. Slotnick (BIS-9796)
Jacques Rimokh (JR-0745)
Christina Monteiro (CM-8395)
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000
Fax (212) 407-4990

*Attorneys for Defendant*
*Universal Music Group Distribution Corp.*

<u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................ii

PRELIMINARY STATEMENT ...........................................................1

STATEMENT OF FACTS ...................................................................2

    A.   The Motion Picture and Don Dinero DVD.........................2

    B.   The Copyright Notices and 2003 Copyright Registration for the Motion Picture Identify Defendants As the Sole Copyright Owners of the Entire Work, Including the Score. ........................................3

    C.   Plaintiff's Purported Registration of the Score in 2005.........................4

ARGUMENT ......................................................................................4

I.   PLAINTIFF'S COPYRIGHT CLAIM IS TIME-BARRED BY THE COPYRIGHT ACT'S THREE YEAR STATUTE OF LIMITATIONS.........................4

    A.   Plaintiff Cannot Circumvent Application of the Absolute Three-Year Time Bar By Casting His Claim as One For Infringement, Rather Than a Declaration of Ownership. ...................................5

    B.   Plaintiff's Ownership Claim Accrued in 2003, When He Knew or Should Have Known That The Defendants Publicly Claimed Sole Ownership Over the Score. .........................6

II.   PLAINTIFF'S STATE LAW UNFAIR COMPETITION CLAIM IS PREEMPTED. ........................................11

    A.   Plaintiff's State Law Claim Seeks Protection of "Rights That Are Equivalent" To Those Governed By The Copyright Act.........................12

    B.   The Score at Issue Falls Within the "Subject Matter" of the Copyright Act.........................14

CONCLUSION.........................15

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Barksdale v. Robinson,*
    211 F.R.D. 240 (S.D.N.Y. 2002) ................................................................6

*Big East Entm't, Inc. v. Zomba Enters., Inc.,*
    453 F. Supp. 2d 788 (S.D.N.Y. Sept. 28, 2006) (Sweet, J.), *aff'd*, No. 06 Civ. 4684,
    2008 WL 89653 (2d Cir. Jan. 8, 2008) ................................................. 4-6

*Briarpatch Ltd. L.P. v. Phoenix Pictures, Inc.,*
    373 F.3d 296 (2d Cir. 2004)...............................................................11

*Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.,*
    510 F.3d 77 (1st Cir. 2007)................................................................6

*Dewan v. Blue Man Group Ltd.,*
    73 F. Supp. 2d 382 (S.D.N.Y. 1999)....................................................10

*Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.,*
    342 F.3d 149 (2d. Cir. 2003)...............................................................9

*Freeplay Music, Inc. v. Cox Radio, Inc.*
    409 F.Supp.2d 259 (S.D.N.Y. 2005)....................................................13

*Kregos v. Associated Press,*
    3 F.3d 656 (2d Cir. 1993)................................................................13

*Margo v. Weiss,*
    No. 96 Civ. 3842, 1998 WL 2558 (S.D.N.Y. Jan. 5, 1998),
    *aff'd*, 213 F.3d 55 (2d Cir. 2000) ....................................................8, 9

*Merchant v. Levy,*
    92 F.3d 51 (2d Cir. 1996).................................................................5

*Minder Music Ltd. v. Mellow Smoke Music Co.,*
    No. 98 Civ. 4496, 1999 WL 820575 (S.D.N.Y. Oct. 14, 1999) ...................... 5-6

*Morris v. Buffalo Chips Bootery, Inc.,*
    160 F. Supp. 2d 718 (S.D.N.Y. 2001)...................................................12

*Netzer v. Continuity Graphic Assocs., Inc.,*
    963 F. Supp. 1308 (S.D.N.Y.1997)....................................................6, 7

*Newsome v. Brown,*
    No. 01 Civ. 2807 (TPG), 2005 WL 627639 (S.D.N.Y. Mar. 16, 2005), *aff'd*, No. 05
    Civ. 4735, 209 Fed. Appx. 11 (2d Cir. Dec. 12, 2006)...........................5, 6

                                                                                                    Page(s)

*Rico Record Distributors, Inc. v. Ithier*,
    No. 04 Civ 9782 (JSR), 2005 WL 2174006 (S.D.N.Y. Sept. 8, 2005).......................7

*Santa-Rosa v. Combo Records*,
    471 F.3d 224 (1st Cir. 2006).................................................................10

*Stone v. Williams*,
    970 F.2d 1043 (2d Cir. 1992)...............................................................10

*Warren v. Fox Family Worldwide, Inc.*,
    171 F. Supp. 2d 1057 (C.D. Cal. 2001), *aff'd*, 328 F.3d 1136 (9th Cir. 2003)..........8

*Weber v. Geffen Records, Inc.*,
    63 F. Supp. 2d 458 (S.D.N.Y. 1999)...............................................12, 13

*Willsea v. Theis*,
    No. 98 Civ. 6773, 1999 WL 595629 (S.D.N.Y. Aug. 6, 1999)................................8


**STATUTES**

17 U.S.C. § 102(a)(2).........................................................................14

17 U.S.C. §§ 106(1), 106(3).................................................................13

17 U.S.C. § 402(b).............................................................................3

17 U.S.C. § 507(b) (2007)...................................................................5


**OTHER AUTHORITIES**

37 C.F.R. § 202.3(b)(3)(i)...................................................................8

1 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 2.05 ...................14

Defendant Universal Music Group Distribution Corp. ("Universal"), named incorrectly herein as Universal Music Group Distribution, Inc., by its attorneys, Loeb & Loeb LLP, respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56 against the claims asserted by plaintiff Jose Ortiz p/k/a JAO ("Plaintiff").

## PRELIMINARY STATEMENT

Although Plaintiff has inaccurately cast this as an infringement case, it is, in reality, a dispute over ownership of the copyrights in the musical works that were expressly created for, and incorporated into, the instrumental score for a straight-to-DVD motion picture first released in November 2003. Plaintiff conveniently fails to allege that defendant Guitian Brothers Music and defendant Universal's affiliate, Universal Music Latino,[1] registered their copyright in the motion picture, including its incorporated musical score, in December 2003 – *two years prior to* Plaintiff's pleaded registration, and more than three years prior to Plaintiff's commencement of this action.

The indisputable facts, most of which come from Plaintiff's own Complaint, establish that Plaintiff knew or clearly should have known of the "injury" giving rise to his claim, *i.e.*, defendants' assertion and exercise of their rights as sole owners of the subject copyrights, no later than December 2003 or January 2004. By that time, defendants had (1) publicly distributed the DVD of the motion picture with notices claiming copyright exclusively in their names; (2) registered their copyright in the motion picture, including the disputed score, in their names alone; and (3) exploited the motion picture without paying any royalties to Plaintiff, which he

---

[1] Universal Music Latino is a division of UMG Recordings, Inc. Defendant Universal is the affiliated music and video distribution entity for UMG Recordings, Inc. (Declaration of Teagan Kossowicz ¶ 8). For ease of reference, hereinafter the term "Universal," and/or "defendant" or "defendants" when referring to Universal, shall also include and refer to its affiliate Universal Music Latino as and where appropriate.

admittedly believed he was due as an alleged copyright owner.

Since Plaintiff did not commence this action until May 18, 2007, more than three years later, he is permanently time-barred by the Copyright Act's three-year statute of limitations from attempting to challenge ownership of the copyrights in the score, which is presumptively established by defendants' December 2003 copyright registration. Plaintiff, therefore, cannot establish that he owns the subject copyrights. Accordingly, his copyright claim must be dismissed as a matter of law.

Plaintiff's "related" common law claim for "unfair competition" also must be dismissed as a matter of law under the preemption doctrine given that it is premised upon the identical alleged conduct underlying his copyright claim.

## STATEMENT OF FACTS

### A.    The Motion Picture and Don Dinero DVD.

As alleged in the Complaint, and assumed to be true for purposes of this motion only, in 2003 defendant Oscar Guitian ("Guitian"), together with his brother Jose Manuel Guitian professionally known as Don Dinero ("Dinero"), solicited Plaintiff to create a series of musical works to be used as the instrumental score (the "Score") for a motion picture entitled *Don Dinero – Su Vida Y La Calle* (the "Motion Picture"). (Compl. ¶ 22). Plaintiff further alleges that he composed the Score in the summer of 2003, and made several trips to Miami in July, August and September 2003 "in order to edit and incorporate" the Score into the Motion Picture. (Compl. ¶¶ 27, 31).

The Motion Picture was released and distributed to the general public on DVD (the "Dinero DVD") beginning on or about November 25, 2003. (Compl. ¶¶ 36, 38). A copy of the Dinero DVD, together with copies of the label and packaging for the Dinero DVD, are submitted herewith as exhibits A and B in the accompanying declaration of Tegan Kossowicz (the

2

"Kossowicz Dec."). Plaintiff is identified as one of the "producers" of the Score in the closing credits of the Motion Picture and on the packaging of the DVD, which reads "Original music scored by da compadres (JAO & Noodles)." (Compl. ¶ 37; Kossowicz Dec., Exs. A and B). Plaintiff, who is professionally known as "JAO," also appears in substantial portions of the Motion Picture. (*See* Kossowicz Dec., Ex. B).

Plaintiff claims in his Complaint that, in consideration for his creation of the Score, defendant Guitian promised Plaintiff, among other things, an ownership interest in Guitian's company. (Compl. ¶ 24). Plaintiff also asserts that, despite due demand, Defendants never paid him, among other things, the "royalties" for their "publishing of his work which is due to Plaintiff through his ownership of the copyrights in the [Score]." (Compl. ¶¶ 42, 44).

### B. The Copyright Notices and 2003 Copyright Registration for the Motion Picture Identify Defendants As the Sole Copyright Owners of the Entire Work, Including the Score.

The Dinero DVD that was distributed nationwide bears copyright notices in several places that identify Universal Music Latino and Guitian Brothers Music as the sole owners of all copyright in the Motion Picture. (Kossowicz Dec. ¶ 6 & Exs. A & B). Specifically, the label of the DVD and the exterior packaging contain the following copyright notice: "(P) & (C) 2003 UNIVERSAL MUSIC LATINO/GUITIAN BROTHERS MUSIC."[2] (Kossowicz Dec. ¶ 7 & Ex. A).

On December 24, 2003, Universal Music Latino submitted a copyright registration application to the United States Copyright Office for the Motion Picture on DVD, including the "Entire Cinematographic Work/Pictorial Matter/Line Notes." (*See* Kossowicz Dec. ¶ 9 & Ex.

---

[2] The "(P)" symbol designates notice of copyright in sound recordings (phonorecords). 17 U.S.C. § 402(b).

3

C).  The Copyright Office granted the copyright registration in the Motion Picture, and issued

Registration Certificate No. PA 1-216-943, effective as of December 24, 2003.  (*Id.*).

### C.      Plaintiff's Purported Registration of the Score in 2005.

Several years after the release of the Motion Picture, Plaintiff obtained a copyright

registration, dated as of August 3, 2005, for the 13 works he claims comprise the Score.  (Compl.

¶ 34; *see also* Declaration of Barry I. Slotnick ("Slotnick Dec.") ¶ 2, Ex. A).  Plaintiff's

registration, however, was issued nearly two years after Universal's affiliate and Guitian

Brothers Music registered their copyright in the Motion Picture, including its incorporated Score.

(*See* Compl. ¶ 34; Slotnick Dec., Ex. A).

Plaintiff later commenced this action more than three years after Plaintiff's alleged

creation of the Score, the nationwide distribution of the DVD and the defendants' registration of

copyright in the Motion Picture in their names only.  (*See generally* Compl.; Compl. ¶ 27).

## ARGUMENT

### I.      PLAINTIFF'S COPYRIGHT CLAIM IS TIME-BARRED BY THE COPYRIGHT ACT'S THREE YEAR STATUTE OF LIMITATIONS.

The defendants first asserted *their* ownership of, and registered *their* copyright in, the

Score two years *prior to* Plaintiff's registration and more than three years prior to Plaintiff's

commencement of this action.  Plaintiff is, thus, barred by the Copyright Act's three-year statute

of limitations from attempting to establish that he, and not  anyone else, owns the copyrights in

the Score.  Since Plaintiff cannot establish that he owns the copyrights at issue, Universal is

entitled to summary judgment dismissing Plaintiff's copyright infringement claim.[3]

---

[3] Universal respectfully refers to, and incorporates, this Court's cogent statement of the summary judgment standard in *Big East Entm't, Inc. v. Zomba Enters., Inc.*, 453 F. Supp. 2d 788, at 794 (S.D.N.Y. Sept. 28, 2006) (Sweet, J.), *aff'd*, No. 06 Civ. 4684, 2008 WL 89653 (2d Cir. Jan. 8, 2008).

Section 507 of the Copyright Act, titled "Limitations on Actions," provides that "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b) (2007). A claim involving a dispute over copyright ownership accrues "when a plaintiff knows or has reason to know of the injury upon which the claim is premised," and, unlike infringement claims, they are not rolling in nature. *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (citing *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992)). Failure to sue within three-years from accrual requires dismissal of a claim disputing copyright ownership and any rights or remedies that would flow from such a claim. *Merchant*, 92 F.3d at 56.

### A. Plaintiff Cannot Circumvent Application of the Absolute Three-Year Time Bar By Casting His Claim as One For Infringement, Rather Than a Declaration of Ownership.

Section 507 bars Plaintiff from attempting to establish that he owns the copyrights at issue *regardless* of the fact that Plaintiff does not expressly seek a declaration of his ownership rights in the Score in the Complaint.

Where, as here, a plaintiff's copyright ownership is not conceded (and, indeed, the defendant holds a prior copyright registration certificate for the disputed work), copyright ownership – and not infringement – is the gravamen of the plaintiff's claim to which the statute of limitations is applied. *See, e.g., Big East Entm't, Inc.*, 453 F. Supp. 2d at 794 (holding that essence of plaintiff's claim was copyright ownership and not infringement; further noting defendant's own prior registration of the works at issue); *Newsome v. Brown*, No. 01 Civ. 2807 (TPG), 2005 WL 627639, at *5-6 (S.D.N.Y. Mar. 16, 2005) (analyzing threshold copyright ownership claim instead of copyright infringement where "essence of the claim" was that plaintiff was sole owner of work), *aff'd*, No. 05 Civ. 4735, 209 Fed. Appx. 11 (2d Cir. Dec. 12, 2006) (unpublished decision); *Minder Music Ltd. v. Mellow Smoke Music Co.*, No. 98 Civ. 4496,

5

1999 WL 820575, at *2 (S.D.N.Y. Oct. 14, 1999) (granting motion for summary judgment where "[a]lthough plaintiff attempt[ed] to portray its claim as one for an ongoing [copyright] infringement, it has been established that the statute of limitation cannot be defeated by portraying an action as one for infringement when copyright ownership rights are the true matter at issue."). *See also Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 87 (1st Cir. 2007) (holding that a plaintiff seeking an accounting on the basis of its alleged co-ownership of a copyright cannot avoid the application of the Copyright Act's statute of limitations to a determination of its alleged ownership rights "by the stratagem of failing to ask for a declaration of ownership . . ."). Plaintiff squarely places ownership of the subject copyright at issue when he alleges, at ¶ 35 of the Complaint, that he "is the sole owner of the copyrights in the [Score]."

Thus, "the infringement claims are barred if the ownership determination is time-barred." *Barksdale v. Robinson*, 211 F.R.D. 240, 246 (S.D.N.Y. 2002); *Newsome*, 2005 WL 627639, at *5.

### B.    Plaintiff's Ownership Claim Accrued in 2003, When He Knew or Should Have Known That The Defendants Publicly Claimed Sole Ownership Over the Score.

As this Court aptly summarized: "Copyright ownership claims accrue 'when a plaintiff knows or has reason to know of the injury upon which the claim is premised.' *Merchant*, 92 F.3d at 56; *see Barksdale*, 211 F.R.D. at 244. Thus, this Court has ruled that '[a]n express assertion of sole authorship or ownership will start the copyright statute of limitations running.' *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1315 (S.D.N.Y.1997)." *Big East Entm't, Inc.*, 453 F. Supp. 2d at 794. There were several such express assertions here – all of which, together, establish that Plaintiff was on notice of the defendants' repudiation of his

copyright ownership claim no later than December 2003 – January 2004, more than 3 years prior to commencing this action in May 2007.

First, the defendants plainly and openly expressed that they, and not Plaintiff, were the sole owners of the copyright in the entire Motion Picture (which includes the Score) by placing the following copyright notice (1) on the label of the disk itself and (2) on the exterior package of the DVD: "(P)&(C) 2003 UNIVERSAL MUSIC LATINO/GUITIAN BROTHERS MUSIC." (Kossowicz  Dec. Ex. A).  The DVD bearing these conspicuous copyright notices was officially released and publicly distributed on or about November 25, 2003.  (Compl. ¶¶ 36, 38).  Plaintiff appears throughout the documentary-style Motion Picture, and apparently was a  friend of Don Dinero.  (*See* Kossowicz Dec., Ex. B).   There can be no serious doubt that Plaintiff, who is appears in  the Motion Picture, and as the alleged creator of the Score for the Motion Picture, was aware of the release  of the DVD with the copyright notices in or around the time it came out in November – December 2003.

Courts have repeatedly held that public distribution of the work at issue bearing copyright notices in the name of the defendant(s), and which exclude the plaintiff claiming to own the subject copyright, creates sufficient notice to begin the running of the statute of limitations.  *See, e.g., Rico Record Distributors, Inc. v. Ithier*, No. 04 Civ 9782 (JSR), 2005 WL 2174006, at *2 (S.D.N.Y. Sept. 8, 2005) (holding that distribution of the sound recordings at issue with copyright notices on the covers that excluded the name of the party claiming copyright ownership and infringement was sufficient to commence the limitations period; barring all ownership and infringement claims as to any recordings released more than three years prior to commencement of action); *Netzer*, 963 F. Supp. at 1315-1316 (alleged co-author's infringement claim accrued when plaintiff received a copy of the subject work with a copyright notice solely in the name of adverse party).

7

Second, on December 24, 2003, Universal Music Latino (defendant Universal's affiliate), registered the copyright in the Motion Picture, and identified "Universal Music Latino and Guitian Brothers Music" as the sole owners of the copyright in the entire motion picture and its Score. (Kossowicz Dec. ¶ 9, Ex. C). It is well-established that the registration of the copyright for a motion picture includes the instrumental score or soundtrack. *See, e.g., Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1065 n. 20 (C.D. Cal. 2001) ("'All copyrightable elements that are otherwise recognizable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same' are considered a single work for registration purposes. 37 C.F.R. § 202.3(b)(3)(i). Consequently, registration of a motion picture (or television show) serves to register the musical compositions contained on the soundtrack of the film or show.") (quoting *Greenwich Film Productions, S.A. v. DRG Records, Inc.*, 833 F. Supp. 248, 251-52 (S.D.N.Y. 1993)), *aff'd*, 328 F.3d 1136 (9th Cir. 2003). Accordingly, this registration also served to place Plaintiff on notice that the defendants expressly repudiated any claim Plaintiff had to any copyright in the Score.

A putative author or copyright owner is deprived of his or her ownership rights in a copyrighted work at the time a copyright registration which fails to list the individual as an author is filed. *See Margo v. Weiss*, No. 96 Civ. 3842, 1998 WL 2558, at *5 (S.D.N.Y. Jan. 5, 1998) ("Any injury plaintiffs suffered by virtue of not receiving credit as co-authors of 'Lion' first occurred in 1961, the year in which the song was written and the copyright certificate listing the lyricists [rather than the plaintiffs] as authors was filed."), *aff'd*, 213 F.3d 55, 59 (2d Cir. 2000); *Willsea v. Theis*, No. 98 Civ. 6773, 1999 WL 595629, at *4-5 (S.D.N.Y. Aug. 6, 1999) ("[O]nce an author registers his copyright, any [unlisted] co-author exercising reasonable diligence should be aware that another person has claimed authorship."). As confirmed in *Margo*, facts contained in official copyright registration documents that are incompatible with

8

the putative author's claim of ownership place him on notice, and will extinguish any claims of authorship or ownership as a matter of law three years after the effective date of registration.[4] *Margo*, 1998 WL 2558, at *5-6.

Here, Plaintiff's alleged "injury" triggering the start of the statutory limitations period occurred no later than December 24, 2003, the effective date of the defendants' copyright registration for the entire Motion Picture, including the Score, which identifies them as the sole owners of the copyright. Plaintiff's failure to commence an action determining his alleged rights, if any, in the subject copyright by <u>December 24, 2006</u> bars whatever rights or remedies, such as the present infringement claims, might have flowed from such a declaration. *See, e.g., Netzer*, 963 F. Supp. at 1315 (granting summary judgment where co-authorship claim accrued when the subject work was registered in sole name of defendant).

<u>Third</u>, Plaintiff's failure to receive any royalties or other expected payments arising out of his claimed copyright ownership in the Score further establishes that Plaintiff knew or should have known that Defendants rejected his claim to own the copyright in the Score. Plaintiff asserts throughout his Complaint that he expected to be paid and is allegedly owed royalties for the use of his alleged Score in the Motion Picture. (Compl. ¶¶ 25, 32, 42 and 44). Plaintiff knew about his alleged work on the Score in the summer of 2003 and, undoubtedly, was aware of the national release of the Motion Picture allegedly including his Score in November 2003. Clearly, Plaintiff knew or should have known no later than January or February 2004 that he was not

---

[4] In *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 164-65, n. 18 (2d Cir. 2003), the Second Circuit discussed the foregoing decisions and noted that it has never "decided whether a copyright ownership claim accrues solely upon an adverse party's filing of a registration reflecting ownership incompatible with that of the claimaint." The court chose not to decide the matter in that case as well. *Id.* at 164-65. *Burne Hogarth* neither overruled nor criticized the *Merchant, Stone* or *Margo* decisions. Rather, it noted that in those cases the plaintiff also was placed on notice due to the failure to receive royalties, *id.* at 164 n. 18, which, as explained below, is precisely the situation here as well.

receiving the royalties he expected as the alleged copyright owner of the Score. Nevertheless, Plaintiff did not commence this action until more than 3 years later, in May 2007.

The Second Circuit has expressly recognized that the non-payment of royalties triggers the accrual of a claim seeking a declaration of ownership. *See*, *e.g.*, *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992) (holding that claim of author's daughter accrued when she was put on notice that "she might be the child of [a well known singer], and she knew then that she was receiving no money as a result of such relationship."); *Dewan v. Blue Man Group Ltd. P'ship*, 73 F. Supp. 2d 382, 387 (S.D.N.Y. 1999) (finding non-payment of royalties gave plaintiff "ample reason" to know to file a co-ownership lawsuit). *Accord Santa-Rosa v. Combo Records*, 471 F.3d 224, 227 (1st Cir. 2006) (barring claim for declaration of copyright ownership brought more than 3 years after plaintiff should have expected payments, holding "we cannot think of a more plain and express repudiation of co-ownership than the fact that Combo openly, and quite notoriously, sold Santa Rosa's records without providing payment to him: according to documents provided by Santa Rosa, at least 1,140 of the recordings in dispute were sold during the six month period between January and June of 2000, almost four years before Santa Rosa filed suit in May 2004.").

As the authorities cited above demonstrate, each of the foregoing "repudiations," on their own, could be sufficient to place Plaintiff on notice and for accrual of the limitations period. However, all three types of "triggering events" are present here and, in combination, leave no doubt that Plaintiff's claim to ownership of the copyrights in the Score accrued no later than December 2003. Accordingly, Plaintiff is time-barred from disputing that Defendants are the sole owners of the copyrights in the 13 works comprising the Score. Therefore, Plaintiff's infringement claim based thereon clearly fails as a matter of law and undisputed fact.

## II.    PLAINTIFF'S STATE LAW UNFAIR COMPETITION CLAIM IS PREEMPTED.

Plaintiff's unfair competition claim, Count II in the Complaint,[5] is preempted by the Copyright Act because it rests exclusively on the identical conduct alleged to be the basis for his infringement claim.

Section 301 of the Copyright Act provides in relevant part: "On or after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively" by the Copyright Act.  17 U.S.C. § 301(a).  In the Second Circuit, state law claims will be deemed preempted under Section 301 if two elements are established.  *See Briarpatch Ltd. L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 304 (2d Cir. 2004).

First, the rights that a plaintiff asserts under state law must be "rights that are equivalent" to those protected by the Copyright Act.  *See* 17 U.S.C. § 301(a); *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999) (citing *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)).  This prong is satisfied whenever a plaintiff "seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law." *Briarpatch Ltd. L.P.,* 373 F.3d at 305.

Second, the work involved must fall within the "subject matter" of the Copyright Act. *See id.* at 304.  This prong is satisfied whenever the work that a plaintiff seeks to protect under state law constitutes a work that is enumerated under Sections 102 and 103 of the Copyright Act as being subject to copyright protection.  *Id.* (Section 301(a) preempts state causes of action if "the particular work to which the state law claim applies falls within the type of works protected

---

[5] The final claim, "Count III" in the Complaint, for "Quasi Contract Unjust Enrichment" is asserted solely against defendants Guitian and Guitian Music, not Universal.  Accordingly, it is not the subject of this motion.

by the Copyright Act in 17 U.S.C. §§ 102 and 103"). Both requirements for preemption are unquestionably satisfied here.

**A.    Plaintiff's State Law Claim Seeks Protection of "Rights That Are Equivalent" To Those Governed By The Copyright Act.**

Plaintiff's state law unfair competition claim meets the first prong of the preemption test because it seeks to vindicate rights in the Score that are identical to rights conferred and protected by the Copyright Act.

Plaintiff's copyright and unfair competition claims both arise from the threshold copyright ownership issue in this action. *See* Discussion I., *supra.* Courts in this district have held that state law unfair competition claims that are grounded in disputes over authorship are preempted by the Copyright Act because they seek to vindicate equivalent rights. *See, e.g., Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999). The court in *Weber* held that plaintiff's state law claims, including a claim of unfair competition, were preempted because these claims required an initial determination of authorship arising under the Copyright Act. The court explained:

> Regardless of the title of each cause of action, Plaintiff's basic claim is that because he is a co-author of the copyrighted material and a co-owner of the copyrights, defendants' copyrights should not entitle them to the full bundle of privileges that attach to copyright ownership. It is only through this basic claim that any enrichment is unjust, that any competition is unfair, or that anyone profiting must account to plaintiff. Accordingly, the Copyright Act preempts plaintiff's three state law claims[.]

*Id. See also Morris v. Buffalo Chips Bootery, Inc.*, 160 F. Supp. 2d 718, 721-22 (S.D.N.Y. 2001) (granting summary judgment and finding preemption of state law unjust enrichment, misappropriation, and unfair competition where said claims were grounded solely in the alleged copying of plaintiff's "protected expression" and sought vindication of same rights as her copyright claims). Similarly here, Plaintiff's claims of unfair competition and copyright

ownership both require construction of the Copyright Act. The right that would entitle Plaintiff to recover on an unfair competition claim, like his copyright infringement claim, depends upon an initial determination of his ownership rights under the Copyright Act.

Even if Plaintiff's copyright claim raised only issues of infringement – which as discussed in Section I., *supra*, it does not – Plaintiff's state law claim as pleaded would still be preempted. Section 106 of the Act confers upon copyright owners the rights to, *inter alia*, "reproduce the copyrighted work in copies" and "distribute copies . . . to the public." 17 U.S.C. §§ 106(1), 106(3). Here, Plaintiff's primary allegation in his unfair competition claim makes it crystal clear that the claim rests exclusively on the same alleged conduct underlying his copyright claim. Plaintiff alleges:

> Defendants, in unlawfully and willfully copying and using the Works in the Motion picture, created a likelihood of confusion among the public as to the original source of Plaintiff's work and have contributed to the dilution of the distinctive quality of Plaintiff's work in the marketplace. [Compl. ¶ 56 (emphasis added)].

The Complaint's reliance upon the same factual allegations supporting his copyright claim further establishes that Plaintiff's unfair competition claim is premised on protection of the same rights already addressed by the Copyright Act. *See, e.g., Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993) (holding that common law unfair competition under New York law was preempted because it required the same proof and rights that were required to establish copyright infringement claim); *Freeplay Music, Inc. v. Cox Radio, Inc.* 409 F. Supp.2d 259, 264 (S.D.N.Y. 2005)(dismissing unfair competition claim as preempted by the Copyright Act; "[S]tate law claims that are substantively redundant of Copyright Act claims are preempted.")(quotation omitted); *Weber*, 63 F. Supp. 2d at 462-63 (holding that state law claims, including unfair competition, asserted by unacknowledged co-author of copyrighted

13

compositions sought "vindication for the violation of essentially identical rights and are therefore preempted by Federal Copyright law"). Therefore, the first prong under Section 301's preemption requirements is satisfied for this additional reason.

**B.    The Score at Issue Falls Within the "Subject Matter" of the Copyright Act.**

The second prong for preemption is also established. The Score which Plaintiff seeks to protect are "musical works," which are specifically enumerated in Section 102(a) as falling within the subject matter of copyright. 17 U.S.C. § 102(a)(2); 1 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 2.05 (noting that legislative history of Copyright Act recognized definition of musical work under § 101 was unnecessary because of its "fairly settled" meaning). Thus, Plaintiff's state law unfair competition claim satisfies this additional prong of the preemption standard set forth in the Copyright Act.

Accordingly, Plaintiff cannot maintain his "state law" unfair competition claim. It is preempted by the Copyright Act and must be dismissed.

14

## CONCLUSION

For the foregoing reasons, Universal respectfully requests that the Court grant its motion for summary judgment in all respects.

Dated: April 30, 2008                          LOEB & LOEB LLP

                                               By: _____
                                                   Barry I. Slotnick (BS-9796)
                                                   Jacques M. Rimokh (JR-0745)
                                                   Christina S. Monteiro (CM-8395)
                                               345 Park Avenue
                                               New York, New York 10154
                                               (212) 407-4000

                                               *Attorneys for Defendant*
                                               *Universal Music Group Distribution Corp.*

15