UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JOSE ORTIZ p/k/a/ JAO,                          :

              Plaintiff,                         :

          -against-                            :        Case No. 07 CV 3897 (RWS)

GUITIAN BROTHERS MUSIC INC.,            :
OSCAR GUITIAN, and UNIVERSAL MUSIC
GROUP DISTRIBUTION, INC.,                :

            Defendants.                       :
--------------------------------------------------------X


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF UNIVERSAL'S MOTION FOR SUMMARY JUDGMENT


LOEB & LOEB LLP
Barry I. Slotnick (BIS-9796)
Jacques Rimokh (JR-0745)
Christina Monteiro (CM-8395)
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000
Fax (212) 407-4990

*Attorneys for Defendant*
*Universal Music Group Distribution Corp.*

Defendant Universal Music Group Distribution Corp. ("Universal"), by its attorneys, Loeb & Loeb LLP, respectfully submits this reply memorandum of law in further support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56 against the claims asserted by plaintiff Jose Ortiz p/k/a JAO ("Plaintiff").

## PRELIMINARY STATEMENT

In its moving papers, Universal demonstrated that Plaintiff is time-barred from challenging defendants' long-established ownership of the copyright in the Score[1] by virtue of three independent "acts" of express repudiation, each of which on its own was sufficient to commence the running of the three-year limitations period. These were (1) defendants' December 2003 registration in their names alone of their copyright in the Motion Picture, including its incorporated musical Score; (2) distribution of the *Don Dinero* Motion Picture on DVD with copyright notices in defendants' names alone; and (3) defendants' refusal to pay any royalties for use of the Score to which Plaintiff believed he was entitled as a purported copyright owner.

In his papers, Plaintiff challenges solely the registration point and failed to raise any argument opposing the latter two "triggering acts" that serve to bar his claim. Accordingly, these two independent grounds for time-barring Plaintiff's claim should be deemed conceded, and Universal is entitled to judgment on its motion on that basis alone. Nevertheless, Universal demonstrates that Plaintiff's sole basis for opposition is utterly meritless.

Years before Plaintiff ever filed his sham copyright registration for the Score to the *Don Dinero* Motion Picture, defendants registered their claim to copyright for the entire Motion Picture, which, beyond any doubt and as a matter of law, included the instrumental Score.

_____

[1] Universal hereby incorporates and uses the same terms as defined in its initial Memorandum of Law.

Contrary to Plaintiff's misguided assertion (Pl. Br. 5-6), the score[2] for a film, and the Score here, is not a separate "preexisting work" that is simply inserted in a film. Just like the lighting, camera shots, choreography, screenplay, etc., the score for a film, is, and has always been treated for copyright purposes as, an integral component of the film. The Ninth Circuit just recently re-confirmed this long-settled principle:

> A motion picture is a work to which many contribute; however, those contributions ultimately merge to create a unitary whole. As one district court explained, "it is impossible to cleave the story, screenplay and musical score of a motion picture film from the film itself."

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, ___ F.3d ___, 2008 WL 2492320, at *11 (9th Cir. Jun. 19, 2008) (quoting *Classic Film Museum, Inc. v. Warner Bros., Inc.*, 453 F. Supp. 852 (D. Me.1978), *aff'd*, 597 F.2d 13 (1st Cir.1979)).

Plaintiff admits that he prepared the subject music specifically for use as the "background instrumental score for the Motion Picture." (Compl. ¶33). The composition of the Score was an act that was concurrent with and integral to the creation of the completed Motion Picture. It is not a "preexisting work" any more than the collection of unedited footage for a few scenes intended to be incorporated into the motion picture are "preexisting works."

Plaintiff's assertion that Universal's arguments somehow confuse the most basic concept of the distinct copyrights in a musical composition and the "sound recording" in which it is embodied is, itself, confused and nothing more than a red herring. (Pl. Br. 4). Universal's moving  memorandum quite clearly addresses ownership of the musical works, not sound recordings, constituting the Score.

Accordingly, Plaintiff's sole point in opposition (at Pl. Br. 7-9), that defendants' 2003

---

[2] As used in the musical context, the term "score" is commonly defined as "the music played as background to or part of a movie, play, or television presentation." "score." Dictionary.com. *Dictionary.com Unabridged* (v 1.1). Random House, Inc. http://dictionary.reference.com/browse/score (accessed: June 25, 2008).

copyright registration for the Motion Picture did not claim copyright in the integrated musical Score, is plainly wrong. Likewise, Plaintiff's repeated assertions, upon which he premises his faulty argument, that his ownership of the copyright in the Score is "undisputed" are also patently false.

Universal is entitled to judgment because Plaintiff waited more than three years after he was on notice that defendants rejected his claim to own the copyright in the Score before commencing this action. Plaintiff does not supply a single legitimate reason why the Copyright Act's three-year statute of limitations, and its policies of repose and predictability in the market for copyrighted works, should not be applied here. Plaintiff's efforts in his opposition to avoid the time-bar are unsupported, self-contradictory and simply wrong as a matter of law.

Plaintiff also does not address or dispute Universal's challenge to his state law claims. Accordingly, dismissal of those claims has been conceded.

Whatever contractual arrangement Plaintiff claims that he made with defendant Oscar Guitian for remuneration for his work on the Score leaves Plaintiff with, at most, a breach of contract claim against the party that hired him (assuming that it is not time-barred). However, as demonstrated herein and in Universal's moving memorandum, any copyright claim by Plaintiff-- as against any of the defendants--is time-barred as a matter of law.

## ARGUMENT

The straightforward facts here present a "textbook" situation for application of the Copyright Act's three-year statute of limitations to bar Plaintiff's belated challenge to defendants' long-established ownership of the copyright in the Score.

In the summer of 2003, at the request of the producers of the project, Plaintiff wrote several instrumental musical pieces comprising the Score for the *Don Dinero* Motion Picture. Defendants claimed ownership of the copyright in the Score as an integrated component of the

Motion Picture and expressly rejected any notion that Plaintiff owned the copyright in the Score. In <u>November-December 2003</u>, two years <u>before</u> Plaintiff registered his claim to the copyright in the Score, defendants (1) publicly distributed the DVD of the Motion Picture with copyright notices claiming copyright exclusively in their names; (2) registered their copyright in the Motion Picture, which included the <u>musical</u> <u>compositions</u> comprising the Score, in their names alone; and, (3) thereafter, openly distributed and exploited the Motion Picture, with its integrated Score, without paying any royalties to Plaintiff.

As established by the numerous authorities cited in Universal's initial memorandum (at pp. 7-10), <u>each</u> of these acts was sufficient to commence the running of the three-year limitations period no later than January 2004 by putting Plaintiff on notice that, in contravention of his claimed ownership rights, defendants asserted sole ownership of the copyright in the Score. *See, e.g., Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992) (holding that claim of author's daughter accrued when she was put on notice that "she might be the child of [a well known singer], and she knew then that she was receiving no money as a result of such relationship."); *Rico Record Distributors, Inc. v. Ithier*, No. 04 Civ 9782 (JSR), 2005 WL 2174006, at *2 (S.D.N.Y. Sept. 8, 2005) (holding that distribution of the sound recordings at issue with copyright notices on the covers that excluded the name of the party claiming copyright ownership and infringement was sufficient to commence the limitations period; barring all ownership and infringement claims as to any recordings released more than three years prior to commencement of action); *Margo v. Weiss*, No. 96 Civ. 3842, 1998 WL 2558, at *5 (S.D.N.Y. Jan. 5, 1998) ("Any injury plaintiffs suffered by virtue of not receiving credit as co-authors of 'Lion' first occurred in 1961, the year in which the song was written and the copyright certificate listing the lyricists [rather than the plaintiffs] as authors was filed."), *aff'd*, 213 F.3d 55, 59 (2d Cir. 2000); *Willsea v. Theis*, No. 98 Civ. 6773, 1999 WL 595629, at *4-5 (S.D.N.Y. Aug. 6,

4

1999) ("[O]nce an author registers his copyright, any [unlisted] co-author exercising reasonable diligence should be aware that another person has claimed authorship. . .").

Tellingly, Plaintiff does not challenge the application of any of these dispositive authorities here. Instead, Plaintiff makes the blatantly false assertion that his ownership of the subject copyrights is "undisputed" here (Pl. Opp. Br. at pp. 3, 8-9) and that defendants do not own the copyrights in the Score. Based upon this fallacy, Plaintiff then asserts that defendants' 2003 copyright registration for the Motion Picture – which pre-dated Plaintiff's registration by two years – could not include the Score because Plaintiff, and not defendants, owned the copyright in the Score. (Pl. Br. 4-6). Plaintiff's argument is circular and baseless. Plaintiff clearly misconstrues the significance of registering the copyright in a motion picture, as well as proper analysis under the Copyright Act's statute of limitations.

As established in Universal's initial memorandum (Mov. Br. 8), the registration of the copyright for a motion picture includes the instrumental score or soundtrack for the motion picture. Specifically, the Motion Picture registration serves to register the copyright in the <u>musical compositions</u> – not simply the "sound recording" – in the Score for the Motion Picture's soundtrack. *See Greenwich Film Prods., S.A. v. DRG Records, Inc.*, 833 F. Supp. 248, 251-52 (S.D.N.Y. 1993) (citing 37 C.F.R. § 202.3(b)(3)(i)). The reason for this is that a musical composition comprising the score of a motion picture is considered to be an integral component of a motion picture – it is <u>not</u>, as Plaintiff incorrectly asserts, a "preexisting work." *See, e.g., Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 2008 WL 2492320, at *11 (quoted above). *See also, generally*, John P. Strohm, *Comment, Writings in the Margin (of Error): The Authorship Status of Sound Recordings Under United States Copyright Law*, 34 Cumb. L. Rev. 127, 148 (2003-04) ("It is well established that the copyright for a motion picture vests in the movie studio that provides the funding, and any contribution of copyrightable subject matter that constitutes a

5

"part" of a motion picture – the screenplay, soundtrack, or an individual sound recording that becomes part of the soundtrack – is regarded as a work made for hire and therefore becomes part of the complete work.").

Courts and commentators distinguish between a musical composition that is a "preexisting work," *i.e.*, it was previously created and published prior to, and separate and apart from, its use in the soundtrack for a film (for example, the inclusion of the popular Motown songs in the 1983 film *The Big Chill*) and a musical composition that was written for the score of a motion picture and is considered an integral component of the motion picture, the copyright in which is owned by the motion picture's producers. As one commentator summarized:

> Most motion pictures contain both original music composed specifically for a particular film and preexisting music (usually popular songs). In order to use preexisting music in a motion picture, the movie studio must obtain the appropriate music licenses from the copyright proprietors.

Vlad Kushnir, *Legal and Practical Aspects of Music Licensing for Motion Pictures*, 8 Vand. J. Ent. & Tech. L. 71, 72 (2005). *See also Traicoff v. Digital Media, Inc.*, 439 F. Supp. 2d 872, 882 n.10 (S.D. Ind. 2006) (summarizing the Kushnir article as "suggesting that most motion pictures contain both original music composed specifically for a particular film and preexisting music, and that while the movie studio must obtain an appropriate music license to incorporate preexisting music into the motion picture, it need not do so for music composed specifically for the movie because the [Copyright] Act excludes such music from the definition of sound recordings").

The only "preexisting works" in the Motion Picture were the three previously-released (and previously registered for copyright) popular songs performed by Don Dinero in the Motion Picture, *i.e.*, the very songs that made Don Dinero notable as a recording artist. These true "preexisting works," *Desaogo Del Alma*, *Pana Pana* and *Yo No Se*, are separately listed on the

6

back cover of the Dinero DVD <u>together with the identification of the separate copyright claimant</u> <u>information for each work</u>.  (Kossowicz Dec. Ex. A.)  There is no such separate listing for the Score, however, because, as Plaintiff admits, the Score was created <u>specifically</u> as "background music" for the Motion Picture.  (Comp. ¶¶ 22, 33).  Accordingly, the Score was not a "preexisting work" and, most certainly, was claimed and registered by defendants in their 2003 registration for the Motion Picture.

Plaintiff concedes, as he must, that a registration of the copyright in the motion picture does encompass, and serve to register, the musical compositions included in its sound track where the owner of the copyright in the motion picture and the musical compositions is the same. (Pl. Opp. Br. at p. 8).  However, Plaintiff attempts to distinguish the principle confirmed, for example, in *Greenwich Film*, by claiming that the registration of a motion picture can only cover a claim to the musical compositions in the score of the motion picture where the owner of the copyright in the motion picture and the score are the same.  (Pl. Opp. Br. at pp. 7-8).  But that is <u>precisely</u> the point here.  In the 2003 registration defendants <u>claimed</u> to be the "same" owner of the copyright in the Motion Picture and the copyright in its instrumental Score.  It is this very act of registering their "claim"[3] to the copyright in the Score that triggered the running of the limitations period.

Contrary to Plaintiff's flawed understanding, <u>regardless</u> of whether defendants can now establish they <u>actually</u> owned the copyright in the Score at the time, defendants' 2003 registration (both on its own and in combination with defendants' other expressions of sole

---

[3] All copyright registrations are really just registrations of "claims" to own the copyright in the subject work. As the Copyright Office states: "The Copyright Office registers <u>claims</u> to copyright and issues certificates of registration but does not "grant" or "issue" copyrights." Copyright Office Circular No. 45, "Copyright Registration for Motion Pictures Including Video Recordings" at p. 1  (emphasis added) ("Circular 45")  (Copy provided as exhibit A to the accompanying Declaration of Christina S. Monteiro, dated June 26, 2008, hereinafter "Monteiro Dec.").

ownership) triggered Plaintiff's three-year limitations period to establish his purported copyright ownership. The entire purpose of the statute of limitations is that once the limitations period has passed, as it has here, the claim of ownership is stale and cannot be revived. *See, e.g., Big East Entm't, Inc. v. Zomba Enters., Inc.*, 453 F. Supp. 2d 788, 795-96 (S.D.N.Y. 2006) (Sweet, J.) (applying "principle of repose of copyright and the public policy of enhancing the predictability of copyright ownership" to bar plaintiff's underlying claim of copyright ownership), *aff'd*, 259 Fed. Appx. 413 (2d Cir. 2008); *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1315 (S.D.N.Y.1997) (dismissal of infringement action because underlying ownership claim was barred by the Copyright Act's statute of limitations "'promot[ed] the principles of repose integral to a properly functioning copyright market' [and] [was] also consistent with the Supreme Court's recognition that 'Congress' paramount goal in revising the 1976 [Copyright Act was] enhancing predictability and certainty of copyright ownership.'" (quoting *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) and *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 749 (1989))). If accepted, Plaintiff's proposed analysis would render the Copyright Act's statute of limitations a complete nullity in ownership or authorship cases. This obviously cannot be the law.

Plaintiff's proffered "interpretation" of the entries in the 2003 Motion Picture registration certificate is also baseless. Per the case law and Copyright Office regulations, the claim in the certificate to own the copyright in the Motion Picture clearly asserted and registered defendants' claim to the copyright in the integrated musical compositions constituting the Score. Contrary to Plaintiff's conclusory and incorrect assertion, the identification of "Words & Music" as "Preexisting Material" in Space 6(a) of the registration certificate <u>does</u> <u>not</u> refer to the instrumental Score for the Motion Picture. Per the Copyright Office's policy, the information in Space 6 is to be provided "<u>only</u> if the work contains a substantial amount of previously

registered, previously published or public domain material." Circular 45 (emphasis in original). Thus, the "Preexisting Material" clearly refers only to Don Dinero's three previously-released songs performed in the Motion Picture, each of which was previously registered for copyright. See Monteiro Dec. Ex. B (attaching printouts from official Copyright Office database of copyright registration information for *Desaogo Del Alma*, *Pana Pana* and *Yo No Se*).

Moreover, Plaintiff does not even address, let alone dispute, the other acts that expressly repudiated Plaintiff's purported copyright ownership in the Score, such as placing copyright notices on the DVD solely in their names. Indeed, Plaintiff <u>does</u> <u>not</u> dispute, and thus concedes, that he had actual notice by December 2003 – January 2004, more than three years before he commenced this action, that the Motion Picture was released on DVD with copyright notices claiming ownership of the copyrights in the entire work <u>solely</u> in the name of defendants. Plaintiff's claim which belatedly attempts to dispute defendants' copyright ownership is time-barred.

## CONCLUSION

For the foregoing reasons, and those in its moving papers, Universal respectfully requests that the Court grant its motion for summary judgment in all respects.

Dated: June 26, 2008

LOEB & LOEB LLP

By: _____
Barry I. Slotnick (BS-9796)
Jacques M. Rimokh (JR-0745)
Christina S. Monteiro (CM-8395)
345 Park Avenue
New York, New York  10154
(212) 407-4000

*Attorneys for Defendant*
*Universal Music Group Distribution Corp.*

9