UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------X

JOSE ORTIZ p/k/a JAO,

                    Plaintiff,                        07 Civ. 3897

        -against-                                     OPINION

GUITIAN BROTHERS MUSIC INC.,
OSCAR GUITIAN and UNIVERSAL MUSIC
GROUP DISTRIBUTION, INC.,

                    Defendants.

-----------------------------------X

A P P E A R A N C E S:


        Attorneys for Plaintiff

        ROBINSON BROG LEINWAND GREENE
          GENOVESE & GLUCK, P.C.
        1345 Avenue of the Americas
        New York, NY   10105
        By:  Daniel Zohny, Esq.

        Attorneys for Defendant
        Universal Music Group Distribution Corp.

        LOEB & LOEB LLP
        345 Park Avenue
        New York, NY   10154
        By:  Barry I. Slotnick, Esq.
             Jacques Rimokh, Esq.
             Christina S. Monteiro, Esq.

        Attorneys for Defendants GBM and Guitan

        HOYOS & ASSOCIATES, LLC
        1825 Ponce de Leon Blvd., No. 238
        Coral Gables, FL   33134
        By:  Sandra Hoyos, Esq.

**Sweet, D.J.,**

Defendant Universal Music Group Distribution Corp.
("Universal") has moved under Rule 56, Fed. R. Civ. P., for
summary judgment dismissing the complaint of Plaintiff Jose
Ortiz, p/k/a/ JAO ("Ortiz" or the "Plaintiff") alleging
copyright infringement, unfair competition and unjust
enrichment.  Defendants Guitian Brothers Music Inc. ("GBMI") and
Oscar Guitian ("Guitian") (together with Universal, the
"Defendants") have moved to dismiss the complaint for lack of
jurisdiction.  GBMI and Guitian have also moved to dismiss the
Complaint on forum non conveniens grounds.  Ortiz has moved for
a default judgment under Rule 55(b)(2), Fed. R. Civ. P, against
GBMI and Guitian.  For the reasons set forth below, the
Universal motion for summary judgment is granted, the GBMI and
Guitian motion to dismiss is denied, and Ortiz's motion for
default judgment is denied.

## Prior Proceedings

Ortiz's complaint was filed on May 18, 2007, and
answered by Universal on July 25, 2007.  The Ortiz motion for a
default judgment was filed on January 31, 2008, and the motion
to dismiss of GBMI and Guitian was filed on February 5, 2008.
The Ortiz motion for default and the GBMI and Guitian motion

were marked fully submitted on March 20, 2008, and the Universal

motion was marked fully submitted on June 27, 2008.

**The Facts**

The facts are stated in the Complaint and Universal's

Local Civil Rule 56.1 Statement and are not disputed except as

set forth below.

In 2003, Guitian, professionally known as "JAO",

together with his brother Jose Manuel Guitian, professionally

known as Don Dinero ("Dinero"), solicited Ortiz to create a

series of musical works to be used as the instrumental score

(the "Score") for a motion picture entitled Don Dinero—Su Vida y

La Calle (the "Motion Picture"). The Complaint alleges that

Guitian and Ortiz entered into an oral agreement regarding

Ortiz's compensation.

Ortiz composed the Score in the summer of 2003, and

made several trips to Miami in July, August and September of

2003 "in order to edit and incorporate" the Score into the

Motion Picture. The Motion Picture was released, distributed

and sold nationwide to the general public on DVD (the "Dinero

DVD") beginning on or about November 25, 2003.

2

Ortiz is identified as one of the "producers" of the musical score in the closing credits of the Motion Picture and on the packaging of the DVD, which reads "Original music scored by da compadres (JAO & Noodles)." Ortiz also appears on camera in substantial portions of the Motion Picture.

The DVD bore copyright notices in several places that identify "Universal Music Latino and Guitian Brothers Music" as the sole owners of the copyright in the Motion Picture.

Specifically, the copyright notice for the Motion Picture on the label of the DVD and the exterior package of the DVD each bear the following copyright notice: "(P) & (C) 2003 UNIVERSAL MUSIC LATINO/GUITIAN BROTHERS MUSIC."[1]

According to the Complaint, despite demand by Ortiz, none of the Defendants paid Ortiz, among other things, the royalties for their "publishing of his work which is due to Plaintiff through his ownership of the copyrights in the [Score]."

---

[1] The "(P)" symbol designates notice of copyright in sound recordings (phonorecords). 17 U.S.C. § 402(b).

Universal Music Latino is a division of UMG Recordings, Inc. Defendant Universal is the affiliated music and video distribution entity for UMG Recordings, Inc.

Universal Music Latino submitted a copyright registration application to the United States Copyright Office for the Motion Picture on DVD, including the "Entire Cinematographic Work/Pictorial Matter/Line Notes." The Copyright Office issued the copyright registration for the Motion Picture on the DVD to Universal Music Latino and Guitian Brothers Music, and issued registration certificate no. PA 1-216-943, effective as of December 24, 2003.

On August 3, 2005, Ortiz obtained a copyright registration for the 13 works which comprise the Score.

## Summary Judgment Standard

In deciding a motion for summary judgment, a court shall render judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also

4

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997).

The moving party has the initial burden of showing that there are no material facts in dispute, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and can discharge this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case, Celotex, 477 U.S. at 325. The nonmoving party then must come forward with "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), as to every element "essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

The Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." Eastway Constr. Corp. v. New York, 762 F.2d 243, 249 (2d Cir. 1985). However, the Court must inquire whether

5

"there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. If there is not, summary judgment is proper. See id. at 249-50.

## The Copyright Claim Against Universal is Barred by the Statute of Limitations

Section 507 of the Copyright Act, titled "Limitations on Actions," provides that "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b) (2007). A claim involving a dispute over copyright ownership accrues "when a plaintiff knows or has reason to know of the injury upon which the claim is premised." Merchant v. Levy, 92 F.3d 51, 56 (2d Cir. 1996) (quotation marks and citation omitted); see also Newsome v. Brown, No. 01 Civ. 2807 (TPG), 2005 WL 627639, at *5 (S.D.N.Y. Mar. 16, 2005). Failure to sue within three years from accrual requires dismissal of a claim disputing copyright ownership and any rights or remedies that would flow from such a claim. Id.

Where, as here, a plaintiff's copyright ownership is not conceded (and, in fact, the defendant holds a prior

copyright registration certificate for the disputed work),
copyright ownership, and not infringement, is the gravamen of
the plaintiff's claim to which the statute of limitations is
applied. See, e.g., Big E. Entm't, Inc. v. Zomba Enters., 453
F. Supp. 2d 788, 795 (S.D.N.Y. 2006) (applying three-year
statute of limitations to infringement claim where ownership was
the "essential issue"); Newsome, 2005 WL 627639, at *5-6
(analyzing claim as one for copyright ownership rather than
copyright infringement where "essence of the claim" was that
plaintiff was sole owner of work), aff'd, No. 05 Civ. 4735, 209
Fed. Appx. 11 (2d Cir. Dec. 12, 2006); Minder Music Ltd. v.
Mellow Smoke Music Co., No. 98 Civ. 4496 (AGS), 1999 WL 820575,
at *2 (S.D.N.Y. Oct. 14, 1999) ("Although plaintiff attempts to
portray its claim as one for an ongoing infringement, it has
been established that the statute of limitations cannot be
defeated by portraying an action as one for infringement when
copyright ownership rights are the true matter at issue.")
(citing Netzer v. Continuity Graphic Assocs., Inc., 963 F. Supp.
1308, 1315 (S.D.N.Y. 1997)).

Here, Ortiz places ownership of the copyright squarely
at issue when he alleges, at ¶ 35 of the Complaint, that he "is
the sole owner of the copyrights in the [Score]." Thus, "the
infringement claims are barred if the ownership determination is

7

time-barred." Barksdale v. Robinson, 211 F.R.D. 240, 246
(S.D.N.Y. 2002) (citation omitted).

As "[c]opyright ownership claims accrue 'when a
plaintiff knows or has reason to know of the injury upon which
the claim is premised,'" Big East Entm't, Inc., 453 F. Supp. 2d
at 794 (quoting Merchant, 92 F.3d at 56), "'[a]n express
assertion of sole authorship or ownership will start the
copyright statute of limitations running.'" Id. (quoting
Netzer, 963 F. Supp. at 1315).

On or about November 24, 2003, when the DVD was
officially released and publicly distributed, the Defendants
expressly asserted that they, and not Ortiz, were the sole
owners of the copyright in the entire Motion Picture, including
the music contained therein, by copyright notice (1) on the
label of the disk itself and (2) on the exterior package of the
DVD, reading: "(P)&(C) 2003 UNIVERSAL MUSIC LATINO/GUITIAN
BROTHERS MUSIC." Public distribution of the work at issue
bearing copyright notices in the name of the defendant(s) which
exclude the plaintiff claiming to own the subject copyright has
been held to create sufficient notice to begin the running of
the statute of limitations. See, e.g., Rico Record
Distributors, Inc. v. Ithier, No. 04 Civ. 9782 (ISR), 2005 WL

2174006, at *2 (S.D.N.Y. Sept. 8, 2005) (holding that distribution of the sound recordings at issue with copyright notices on the covers that excluded the name of the party claiming copyright ownership and infringement was sufficient to commence the limitations period).

In addition to public distribution of the Motion Picture, the Defendants' act of registration should have put Ortiz on notice of his claim. In December 2003, GBMI and Universal registered their copyright in the Motion Picture in their names alone. As Ortiz authored the Score with the knowledge that it was going to be used in the Motion Picture, he should reasonably have anticipated that Defendants would seek to copyright the Motion Picture prior to or in conjunction with marketing and distributing it and, in the exercise of reasonable diligence, discovered the Defendants' registration. See, e.g., Margo v. Weiss, No. 96 Civ. 3842 (MBM), 1998 WL 2558, at *5 (S.D.N.Y. Jan. 5, 1998) ("Any injury plaintiffs suffered by virtue of not receiving credit as co-authors of [the work at issue] first occurred in 1961, the year in which the song was written and the copyright certificate listing the lyricists [rather than the plaintiffs] as authors was filed."), aff'd, 213 F.3d 55, 59 (2d Cir. 2000); cf. Willsea v. Theis, No. 98 Civ. 673 (BSJ), 1999 WL 595629, at *4-5 (S.D.N.Y. Aug. 6, 1999) ("Co-

9

authors know their status as authors from the time the
copyrighted work is created. Moreover, once an author registers
his copyright, any [unlisted] co-author exercising reasonable
diligence should be aware that another person has claimed
authorship.") (citation omitted).

Finally, the Defendants' open distribution and
exploitation of the Motion Picture and Score without paying any
royalties to Ortiz should have put Ortiz on notice that
Defendants rejected his claim to copyright in the Score. See,
e.g., Santa-Rosa v. Combo Records, 471 F.3d 224, 227 (1st Cir.
2006) (barring claim for declaration of copyright ownership
brought more than 3 years after plaintiff should have expected
payments, holding, "[W]e cannot think of a more plain and
express repudiation of co-ownership than the fact that Combo
openly, and quite notoriously, sold Santa Rosa's records without
providing payment to him: according to documents provided by
[the plaintiff], at least 1,140 of the recordings in dispute
were sold during the six month period between January and June
of 2000, almost four years before [the plaintiff] filed suit in
May 2004."); cf. Dewan v. Blue Man Group Ltd. P'ship, 73 F.
Supp. 2d 382, 387 (S.D.N.Y. 1999) (finding non-payment of
royalties, as well as defendants' failure to respond to proposed

10

agreements, gave plaintiff "ample reason to know a lawsuit was necessary").

Ortiz does not dispute Universal's contention that he was on notice no later than February 2004, but instead asserts that his ownership of the subject copyrights is "undisputed", as Defendants' 2003 copyright registration for the Motion Picture, which predated Plaintiff's registration by two years, did not include the musical compositions underlying the Score. Specifically, Ortiz has asserted that compositions constituted separate, "preexisting works" not covered by Defendants' 2003 copyright registration,[2] see Pl.'s Mem. in Opp. at 5, and that any rights Universal may have to the sound recordings contained in the Motion Picture by virtue of its registration of the film itself do not extend to the "musical compositions" underlying the sounds.

---

[2] Courts and commentators have distinguished between music that is a "preexisting work," i.e., it was previously created and published prior to, and separate and apart from, its use in the soundtrack for a film, and music that was written specifically for the score of a motion picture. See Vlad Kushnir, Legal and Practical Aspects of Music Licensing for Motion Pictures, 8 Vand. J. Ent. & Tech. L. 71, 72 (2005) ("Most motion pictures contain both original music composed specifically for a particular film and preexisting music (usually popular songs). In order to use preexisting music in a motion picture, the movie studio must obtain the appropriate music licenses from the copyright proprietors."); see also Traicoff v. Digital Media, Inc., 439 F. Supp. 2d 872, 882 n.10 (S.D. Ind. 2006) (summarizing the Kushnir article as "suggesting that most motion pictures contain both original music composed specifically for a particular film and preexisting music, and that while the movie studio must obtain an appropriate music license to incorporate preexisting music into the motion picture, it need not do so for music composed specifically for the movie because the [Copyright] Act excludes such music from the definition of sound recordings").

11

Universal argues that since Ortiz has alleged that he prepared the subject music specifically for use as the "background instrumental score for the Motion Picture," Compl. ¶ 33, he has conceded that the Score, was not, in fact, a "preexisting work." According to Universal, the only "preexisting works" in the Motion Picture were the three previously released (and previously registered) popular songs performed by Don Dinero in the Motion Picture, "Desaogo Del Alma," "Pana Pana," and "Yo No Se." See Decl. of Christina S. Monteiro, Ex. B (attaching printouts from Copyright Office database of registration information for "Desaogo Del Alma," "Pana Pana" and "Yo No Se"). These "preexisting works" are separately listed on the back cover of the Dinero DVD together with the identification of the separate copyright claimant for each work. There is no such separate listing for the Score. In addition, "Space 6" of the registration certificate for the Motion Picture identifies "Words & Music" as "Preexisting Material," which, according to Universal, refers solely to Don Dinero's three previously released songs performed in the Motion Picture, as each of those songs was previously registered, and, according to Universal, the Copyright Office instructs that the information in Space 6 is to be provided "'only if the work contains a substantial amount of previously registered,

12

previously published or public domain material.'" Def.'s Reply
Mem. in Supp. at 8-9.

With regard to Ortiz's assertion that any rights
Universal may have to the sounds contained in the Motion Picture
by virtue of its registration of the film itself do not extend
to the "musical compositions" underlying the sounds, Universal
argues that the registration of the copyright for a motion
picture includes the instrumental score or soundtrack for the
motion picture and serves to register the copyright in the
musical compositions, not simply the "sound recording," in the
Motion Picture's soundtrack. See Warren v. Fox Family
Worldwide, Inc., 171 F. Supp. 2d 1057, 1065 n.20 (C.D. Cal.
2001) ("All copyrightable elements that are otherwise
recognizable as self-contained works, that are included in a
single unit of publication, and in which the copyright claimant
is the same are considered a single work for registration
purposes. . . . Consequently, registration of a motion picture
(or television show) serves to register the musical compositions
contained on the soundtrack of the film or show.") (citing
Greenwich Film Productions, S.A. v. DRG Records, Inc., 833 F.
Supp. 248, 251-52 (S.D.N.Y. 1993)), aff'd, 328 F.3d 1136 (9th
Cir. 2003) (internal quotation marks and citations omitted)).

13

While Ortiz maintains in his opposition to Universal's motion that his claim is not about ownership of the copyright in the Score, but, rather, about infringement of his 2005 registration, the fact that Universal registered the Motion Picture in 2003 places the issue of the effect of that registration on the ownership of the compositions at issue. While the Court is inclined to adopt the Universal's position as to the immediate effect of its 2003 registration on the ownership of the compositions, the Court need not resolve the question here. As it has been determined that ownership is the essential issue, the three-year statute of limitations applies. Since Ortiz's copyright claim is based upon Defendants' alleged use of the compositions by distributing the Motion Picture and Score, and, therefore, their assertion of ownership of the compositions since November 2003, the notice to Ortiz of Defendants' assertion of ownership no later than January or February of 2004 renders his claim time-barred.

## The State Law Claim For Unfair Competition is Preempted and Dismissed

"The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied

14

falls within the type of works protected by the Copyright Act
under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to
vindicate legal or equitable rights that are equivalent to one
of the bundle of exclusive rights already protected by copyright
law under 17 U.S.C. § 106." Briarpatch Ltd., L.P. v. Phoenix
Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004), cert. denied,
544 U.S. 949 (2005). State law rights that "may be abridged by
an act which, in and of itself, would infringe one of the
exclusive rights provided by federal copyright law" are
therefore preempted. Computer Assocs. Int'l. Inc. v. Altai,
Inc., 982 F.2d 693, 716 (2d Cir. 1992).

In order for a state cause of action to survive
preemption, it must have an "extra element" beyond reproduction,
preparation of derivative works, distribution, performance or
display which "changes the nature of the action so that it is
qualitatively different from a copyright infringement claim."
Id. In order to determine whether a state law claim meets this
standard, the Court must "determine what plaintiff seeks to
protect, the theories in which the matter is thought to be
protected and the rights sought to be enforced." Id. An action
"will not be saved from preemption by elements such as awareness
or intent, which alter the action's scope but not its nature."
Id. at 717.

15

"Courts have generally concluded that the theory of
unjust enrichment protects rights that are essentially
'equivalent' to rights protected by the Copyright Act; thus,
unjust enrichment claims relating to the use of copyrighted
material are generally preempted." Weber v. Geffen Records,
Inc., 63 F. Supp. 2d 458, 462 (S.D.N.Y. 1999) (quoting Netzer v.
Continuity Graphic Assocs., Inc., 963 F.Supp. 1308, 1322
(S.D.N.Y. 1997)); see also Kregos v. Associated Press, 3 F.3d
656, 666 (2d Cir. 1993) (holding that common law unfair
competition under New York law was preempted because it required
the proof of no extra element beyond that required to establish
copyright infringement).

Here, as the cause of action for unjust enrichment
against Universal arises solely out of the allegations of
underlying the claim for copyright infringement, seeks to
protect rights in a copyrightable work that are identical to
rights conferred and protected by the Copyright Act (namely the
exclusive rights to reproduce and distribute copies of the Score
to the public pursuant to 17 U.S.C. §§ 106(1), 106(3)), and no
"extra element" of proof is required to establish liability
beyond that which would be required to establish a violation of
the Copyright Act, the claim is preempted and must be dismissed.

## The Motion for a Default Against GBMI and Guitian is Denied

"[O]pposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion." Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981). "Under Rule 55(c), the principal factors bearing on the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." Id. at 277 (citing Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 373 (D.C. Cir. 1980)). In determining whether granting default judgment is appropriate, the Court bears in mind that, "[w]hile courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." Id. Therefore, "any doubt as to whether a default judgment should be entered must be resolved in favor of the opposing party." Williams v. Helbig, 208 F.R.D. 41, 44 (S.D.N.Y. 2002) (citing Enron Oil v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)).

Here, GBMI and Guitian have not directly offered an explanation for their failure to answer or move in a timely fashion. However, a dispute has been set forth with regard to

17

communications about discovery between the parties' counsel and GBMI and Guitian's earlier attempt to file a motion to dismiss, and Ortiz has failed to allege or demonstrate that "the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion," Williams, 208 F.R.D. at 45 (quoting Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983)). In light of the absence of evidence establishing a willful default or prejudice to Ortiz and the preference for adjudication on the merits, Ortiz's motion for a default judgment is denied.

## The Court Has Jurisdiction over GBMI and Guitian

GBMI and Guitian have moved to dismiss the Complaint for lack of subject-matter and personal jurisdiction.

*i. Subject-Matter Jurisdiction*

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."

Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007) (quoting Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002)).

GBMI and Guitian appear to contend that Ortiz's claim does not "arise under" the Copyright Act, and therefore, this Court does not have jurisdiction, as the claim is essentially a dispute about the ownership of the Score revolving around the alleged agreement between the parties. See Def.'s Mem. in Supp. at 8. "[A]n action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement . . . or asserts a claim requiring construction of the Act." T. B. Harms Co. v. Eliscu, 339 F.2d 823, 828 (2d Cir. 1964); Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 355 (2d Cir. 2000) ("When a complaint alleges a claim or seeks a remedy provided by the Copyright Act, federal jurisdiction is properly invoked."). While it is true that "[i]f the dispute is about the ownership of a copyright, and turns on the interpretation of a contract, then no federal question is presented," Reinhardt v. Wal-Mart Stores, Inc., 547 F. Supp. 2d 346, 351 (S.D.N.Y. 2008), here, Ortiz asserts a copyright infringement claim, and seeks relief pursuant to the Copyright Act, based upon his 2005 registration of a copyright in the works comprising the Score. As the resolution of Ortiz's copyright claim turns on what, if any, exclusive rights Ortiz

19

has as a result of his 2005 registration, the claim arises under the Copyright Act, giving this Court subject-matter jurisdiction.

*ii. Personal Jurisdiction*

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction, which may be satisfied prior to discovery by a prima facie showing. See Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). "All pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor." Galerie Gmurzynska v. Hutton, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003) (quoting Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985)).

The Complaint alleges that GBMI is a Florida corporation with offices in Florida, Compl. ¶ 3, and that Guitian resides in Florida and is a principal of GBMI, Compl, ¶ 7. The Complaint further alleges that both GBMI and Guitian have conducted business in the state of New York, and that the business of both Defendants has had consequences in New York and

20

substantial revenues have been derived from commerce here.
Compl. ¶¶ 4-6, 8-10. No details of the alleged New York
contacts are set forth in the Complaint. Ortiz has not alleged
that either GBMI or Guitian has offices, property, employees or
agents in New York. In an affidavit submitted in connection
with his opposition to this motion, Ortiz states that he
purchased a copy of the allegedly infringing DVD at a retailer
in New York, see Pl.'s Mem. in Opp., Ex. C, and Ortiz asserts
that the fact that the DVD was for sale in this jurisdiction
establishes the Court's personal jurisdiction over GBMI and
Guitian.

　　　　In determining a motion to dismiss a complaint under
Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, a
federal court will first apply the law of the state where the
court sits to determine if personal jurisdiction over a
defendant exists. Bank Brussels Lambert v. Fiddler Gonzalez &
Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). In assessing
whether personal jurisdiction is authorized under New York law,
the Court looks to whether the defendant is either "present" in
New York within the meaning of New York Civil Practice Law and
Rules ("CPLR") § 301 or has committed acts within the scope of
New York's long-arm statute, CPLR § 302. If the exercise of
jurisdiction is appropriate under New York's long-arm statute,

the Court must decide whether such exercise comports with the requisites of due process. Sun Micro Med. Techs. Corp. v. Passport Health Communs., Inc., No. 06 Civ. 2083 (RWS), 2006 U.S. Dist. LEXIS 87772, at *16 (S.D.N.Y. Dec. 4, 2006). "The [C]ourt must 'determine the issue of personal jurisdiction separately for each cause of action [and for each defendant].'" Rockshots, Inc. v. Comstock Cards, Inc., No. 87 Civ. 3453 (CSH), 1990 U.S. Dist. LEXIS 6359, at *5-6 (S.D.N.Y. May 29, 1990) (quoting Interface Biomedical Laboratories v. Axiom Medical, 600 F. Supp. 731, 734 (E.D.N.Y. 1985)).

## a. Copyright Infringement Claim

On this motion, Ortiz does not assert that this Court has general jurisdiction pursuant to CPLR § 301, under which a foreign defendant corporation is amenable to suit in New York if it has engaged in "such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted[.]" Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 33 (1990) (citing Laufer v. Ostrow, 55 N.Y.2d 305, 309-310 (1982)). Ortiz has not alleged that either GBMI or Guitian has offices, property, employees or agents in New York, nor has Ortiz established "substantial solicitation that is carried on with a

22

considerable measure of continuity and from a permanent locale within the state." Sun Micro Med. Techs. Corp., 2006 U.S. Dist. LEXIS 87772, at *19 (quoting Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir. 1983) (internal quotation marks omitted).

Rather, Ortiz asserts that this Court has specific jurisdiction over GBMI and Guitian pursuant to New York's long-arm statute, CPLR § 302(a), which provides, in relevant part, that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortuous act within the state . . .; or; 3) commits a tortious act without the state causing injury to person or property within the state . . . ." The statute requires "a strong nexus between the plaintiff's cause of action and the defendant's in state conduct." Citigroup, Inc. v. City Holding Co., 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000) (quoting Welsh v. Servicemaster Corp., 930 F. Supp. 908, 910 (S.D.N.Y 1996)).

Ortiz states in his affidavit that he purchased a copy of the allegedly infringing DVD in New York. "Offering one copy of an infringing work for sale in New York . . . constitutes

commission of a tortious act within the state sufficient to
imbue [the] Court with personal jurisdiction over the
infringers." Editorial Musical Latino Americana, S.A. v. Mar
Int'l Records, Inc., 829 F. Supp. 62, 64 (S.D.N.Y. 1993); see
also Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.,
779 F. Supp. 335, 337-38 (S.D.N.Y. 1991). "This Court has
jurisdiction even if the products for sale are offered through
independent brokers in New York," Editorial Musical Latino
Americana, S.A., 829 F. Supp. at 64 (citing CPLR § 302(a) ("in
person or *through an agent*")), however, "'the supplier must sell
the goods to the latter party with full knowledge that the goods
will or can be reasonably expected to be sold in New York, where
they will infringe plaintiff's [intellectual property rights.]'"
Cartier v. Oakley, Inc., No. 06 Civ. 5841 (LAP), 2006 U.S. Dist.
LEXIS 90112, at * 10 (S.D.N.Y. Dec. 11, 2006) (quoting Capitol
Records, Inc. v. Kuang Dyi Co. of RM, No. 03 Civ. 0520 (LAP),
2004 U.S. Dist. LEXIS 3305, at *4 (S.D.N.Y. Mar. 4, 2004)). As
GBMI and Guitian have failed to contest the Plaintiff's
allegations regarding their involvement in the distribution of
the allegedly infringing DVD, either directly or through
Universal, accepting Ortiz's allegations in his Complaint and
affidavit as true, he has alleged facts sufficient to establish
this Court's jurisdiction over GBMI and Guitian with regard to
the copyright infringement claim, as well as the unfair

24

competition claim, which arises out of the same set of facts. For the purposes of those claims, the jurisdictional analysis is the same for GBMI and Guitian, the "principal officer" of GBMI, as he may be held individually liable for any acts of infringement. See Lauratex Textile Corp. v. Allton Knitting Mills Inc., 517 F. Supp. 900, 904 (S.D.N.Y. 1981) ("An individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity is personally liable for the infringement."); see also Colour & Design v. U.S. Vinyl Mfg. Corp., No. 04 Civ. 8332 (MBM), 2005 WL 1337864, at *3 (S.D.N.Y. June 3, 2005) ("So long as he can be held personally liable for U.S. Vinyl's acts of infringement and unfair competition as alleged in the complaint, [the president and CEO of corporate defendant] is subject to personal jurisdiction.").

It is the well-established due process standard for personal jurisdiction over a defendant not physically present within the forum that such defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l. Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457 (1940)); see also Asahi Metal Indus. Co. v. Superior Court of

Cal., 480 U.S. 102, 108-09 (1987). Sufficient "minimum contacts" are established when "the defendant's conduct and connection with the forum State are such that he should reasonable anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). These minimum contacts must be based upon "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "Ordinarily . . . if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits." Cartier, 2006 U.S. Dist. LEXIS 90112, at * 13 (quoting Topps Co. v. Gerrit J. Verburg Co., 961 F. Supp. 88, 90 (S.D.N.Y. 1997)).

As the Supreme Court stated in World-Wide Volkswagen, "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." 444 U.S. at 297-98. Through their alleged, and uncontested, involvement in the nationwide distribution of the allegedly infringing DVD, which is offered

for sale in New York, GBMI and Guitian have availed themselves
of the privilege of doing business in New York and it therefore
comports with the Due Process Clause to subject them to this
Court's jurisdiction. See, e.g., Editorial Musical Latino
Americana, S.A., 829 F. Supp. at 66-67.

b. *"Quasi Contract Unjust Enrichment" Claim*

With regard to the "quasi contract unjust enrichment"
claim against GBMI and Guitian, however, Ortiz has failed to
establish this Court's jurisdiction. While, in the absence of
general jurisdiction, this Court could have jurisdiction over
GBMI and Guitian pursuant to CPLR § 302(a)(1) if the contract
between them and Ortiz had the requisite connection to New York,
Ortiz has not established that the elements required for the
exercise of such jurisdiction are present here.

In determining whether a defendant transacted business
in New York, the Court considers: (i) whether the defendant has
an on-going contractual relationship with a New York
corporation; (ii) whether the contract was negotiated or
executed in New York and whether, after executing a contract
with a New York business, the defendant has visited New York for
the purpose of meeting with parties to the contract regarding

27

the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22-23 (2d Cir. 2004) (citing Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)). Even assuming that the oral agreement which Ortiz alleges constituted an "on-going contractual relationship," Ortiz does not allege that the agreement was negotiated or executed in New York, that Guitian has visited New York regarding the contract, or that the parties agreed to be governed by the law of New York. In the absence of any of these factors, exercising personal jurisdiction over GBMI and Guitian with regard to this claim would not meet the standard for due process.

## **The Forum Non Conveniens Motion is Denied**

GBMI and Guitian assert that this Court should dismiss the Complaint on the basis of forum non conveniens. However, "since the enactment of 28 U.S.C. § 1404, 'it is only when the more convenient forum is in a foreign country--or, perhaps, under rare circumstances, in a state court or a territorial court--that a suit brought in a proper federal venue can be

28

dismissed on grounds of forum non conveniens.'" <u>Rosenman &</u>
<u>Colin LLP v. Sandler</u>, 2002 U.S. Dist. LEXIS 900, No. 01 Civ.
7123, at *9 (S.D.N.Y. Jan. 17, 2002) (quoting <u>Schechter v. Tauck</u>
<u>Tours, Inc.</u>, 17 F. Supp. 2d 255, 258 (S.D.N.Y. 1998)). As GBMI
and Guitian have only identified Florida, with no mention
specific district within Florida, and, inexplicably, England, as
their choice of alternative fora, the Court will not construe
their motion as a motion to transfer. The <u>forum non conveniens</u>
motion is denied, and leave is granted to GBMI and Guitian to
file a motion to transfer.

## Conclusion

The motion of Universal for summary judgment
dismissing Counts I and II is granted, the Ortiz motion for
default judgment is denied, and the motion of GBMI and Guitian
to dismiss is granted as to Count III. Ortiz is granted leave
to replead Count III within 20 days.

It is so ordered.

**New York, N.Y.**
**September 2 4 , 2008**

**ROBERT W. SWEET**
**U.S.D.J.**